**HARRISON et al. v. NEW YORK LIFE INS. CO., and three other cases.**

Nos. 6706–6709.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1935.

Lowry F. Sater and John M. Rankin, both of Columbus, Ohio (Vorys, Sater, Seymour & Pease, of Columbus, Ohio, on the brief), for appellants.

Francis Wright and Earl Morris, both of Columbus, Ohio (Frederick L. Allen and Louis H. Cooke, both of New York City, and Phineas M. Henry, of Des Moines, Iowa, on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The four cases were consolidated for trial below, and for argument on appeal. The appellants are the executors of the estate of Wilbur Vernon Harrison, deceased, and residents of Ohio. The appellees are insurance companies incorporated under laws of states other than Ohio. The deceased was insured by policies in appellee companies, the contract with the Travelers' being a straight accident policy and the others life policies with a double indemnity clause for accidental death.

The deceased was instantly killed on May 14, 1930, by a fall from the window of a room on the fourteenth floor of the Union League Club, Chicago. The Travelers' denied any liability, and the other defendants contested double liability on the ground that the death of the insured was not effected solely and independently and exclusively of all other causes by accidental means; all contending (1) that Harrison died as a result of suicide, and (2) if not from suicide, then that illness or disease was a contributing cause. The issues were submitted to the jury, with the result that general verdicts were returned in favor of the defendant companies, and appeals by plaintiffs below followed.

Two grounds of error are assigned in support of reversal; the first, the failure of the court to grant a request for instruction to the effect that the burden was upon the defendants to establish that death was caused directly or indirectly, wholly or partly, by physical or mental infirmity, illness, or disease in some form, or conversely, placing the burden in this respect upon the plaintiffs; the second, the admission in evidence, over objection, of the opinion of the insured's physician, that illness was a contributing cause of death.

The insured was a citizen of Columbus, Ohio, and a man of substantial affairs. At the time of his death he owed considerable money, but his income likewise was large. About the 1st of May, 1930, he consulted Dr. Coons, his family physician, complaining that he was mentally and physically tired, was carrying a heavy load, sleeping poorly, and had attacks of dizziness or vertigo. The physician found his general condition good, diagnosed his trouble as nervous exhaustion, and prescribed exercise in the open air. In pursuance of this advice the insured went to French Lick Springs, Ind., for a few days of recreation and golf. An intimate friend who accompanied him noticed nothing unusual about his condition, though he spoke of having been subject to dizziness and vertigo. After six days at French Lick the insured went to Chicago, and on the evening of May 13th registered at the Union League Club, where he usually stopped. The hotel employees noticed nothing unusual about his conduct. About 7 o'clock on the following morning the telephone operator of the club received a call from the room occupied by the deceased asking that a bell boy be sent. Before the request could be complied with another call was received asking for a doctor. Before a physician could be summoned report came that the insured's body had been found in the street badly crushed. The only window in the room he had occupied was approximately 140 feet above the street. No one was with the insured that morning, and no one saw the fall. The room was found to be in good order, except that underneath the window, and a little to the right, the carpet was dragged back about half an inch from the wall, and the tack holding it down had been pulled out. The window was open about eighteen and a half inches. Fingerprints were discovered extending over the outside and inside window sill. It was claimed that they were those of one hanging out of the window before letting go. In rebuttal an expert testified that if the finger marks were made by the insured he was facing the window as a man would face it leaning out.

The theory of the plaintiffs at the trial was that the insured had leaned out of the window, perhaps to take a breath of fresh air, and while in that position had lost his balance, or the carpet had given way, causing his foot to slip, or that some attack of indigestion or other temporary weakness had caused him to fall. The defendants, as has been stated, claimed suicide, and in the alternative, that while the insured was leaning out of the window he had been seized with an attack of vertigo or dizziness due to the nervous exhaustion from which he was suffering, and was thereby caused to lose his balance and fall

to his death; that because of this fact his death was caused directly or indirectly by bodily or mental infirmity, illness, or disease.

The several policy provisions with respect to indemnity, while not identical, are similar, and for present purposes it is sufficient to set forth one as typical of all. We take at random the provision in the New York Life policy. It recites that the company will pay a certain sum upon due proof of death, or,

"Double the face of this policy upon receipt of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty days after sustaining such injury.

"This double indemnity benefit will not apply if the insured's death resulted from * * * physical or mental infirmity; or directly or indirectly from illness or disease of any kind."

It is appellants' contention that while the burden of proof remains always upon the plaintiffs to establish that the death resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental cause, the plaintiffs meet this burden by showing that death resulted from bodily injuries alone, and that such bodily injuries were caused by violent and external means, and were accidental, in that the sole efficient or predominant cause was accidental. But it is further contended that if the insurer seeks by an exception in the policy to relieve itself of liability in the event that the sole and efficient cause is it-self produced by circumstances such as physical or mental infirmity, or illness or disease of any kind, that it then must both allege and prove the facts which bring the exception into operation, and that the burden of proof with respect to such facts is upon the insurer.

The appellants' position amounts to this: Standing alone, the general insuring clause, without the aid of the limiting provision relating to death resulting from physical or mental infirmity, illness, or disease, brings the death within the contract, since it was effected solely by the accident, whatever may have brought about the latter, for this is not a case where pre-existing disease and accidental injuries contribute concurrently to death, the one ag-gravating the effects of the other, since the fall would have killed the insured whatever may have been his condition. The limiting clauses, however, are conceded to place the death without the contract if the jury upon proper instruction should find that the accident was itself the result of some bodily or mental infirmity, illness, or disease, within the meaning of those terms as used, since neither at the trial nor here was it urged that liability exists, notwithstanding any finding of the jury as to infirmity or disease as a cause of the fall. The general liability provision is therefore urged as the measure of the defendants' liability unless and until the defendants satisfy the jury by a preponderance of the evidence of the existence of the facts and circumstances which bring the death within the scope of the exception reserved by the insurers to the obligation imposed upon them by the insurance contracts.

Assuming without deciding that the resultant effect of two somewhat conflicting portions of the charge was to place the burden upon the plaintiffs to prove not only the accident and that death was solely effected by it independently of all other causes, but also that the accident itself was not brought about by physical or mental infirmity, illness, or disease, we give consideration to the contention thus outlined. The authorities are concededly in conflict. There are many state cases which hold that qualifying language such as here used creates an exception to the general insuring clause, and as such must be both alleged and proved by the insurer, with the burden upon it to bring itself within the exception. There are Federal cases which are in accord, such as McCarthy v. Travelers' Ins. Co., 15 Fed. Cas. No. 8682, page 1254, and others that are cited in our opinion in Order of United Commercial Travelers v. Elliott, 65 F.(2d) 79. We did not, however, in the Elliott Case give our approval to the doctrine there invoked with respect to the burden of proof, and careful consideration of the decisions in this and other circuits leads us to the view that it is unsound.

In Travelers' Ins. Co. v. Melick, 65 F. 178, at page 186, 27 L. R. A. 629 (C. C. A. 8), a general charge that to entitle the plaintiff to recovery it was his duty to establish the truth of every affirmative proposition which it was necessary for him to show in order to justify a recovery, was sustained as against a somewhat similar

contention. This holding was approved by the same court in National Masonic Accident Ass'n v. Shryock, 73 F. 774 (C. C. A. 8), and in accord are Aetna Life Ins. Co. v. Ryan, 255 F. 483 (C. C. A. 2); Kerns v. Aetna Life Ins. Co., 291 F. 289 (C. C. A. 8); O. U. C. T. v. Nicholson, 9 F.(2d) 7 (C. C. A. 2); Smith v. Mutual Life Ins. Co., 31 F.(2d) 280 (C. C. A. 5); Lincoln National Life Ins. Co. v. Erickson, 42 F.(2d) 997 (C. C. A. 8); Brown v. Maryland Casualty Co., 55 F.(2d) 159 (C. C. A. 8). In this court approval was given to an instruction placing the burden upon the plaintiff to establish the fact that death was the result of accident only without the concurrence of any cause resulting from any disorder or disease or infirmity, in Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, at page 951, 22 L. R. A. 620. While approval of the charge was with reference to recitals therein specifically excepted to, yet the court had earlier in its opinion explicitly held that the burden of proof on the issue as to the manner and cause of the death was upon the plaintiff. In New York Life Ins. Co. v. Ollich, 42 F.(2d) 399, 403, we rejected the contention where the felony clause was in issue, that it was an exception placing the burden of proving felony upon the insurer. Wallace v. Standard Accident Ins. Co. (C. C. A.) 63 F.(2d) 211, is not contra, as we were not concerned with any question respecting the burden of proof, but were determining only whether the plaintiff had established his case by substantial evidence. In New York Life Ins. Co. v. Ross, 30 F. (2d) 80, at page 82, this court gave approval to the general principle that the burden of proof in its usual and primary meaning as the risk of nonpersuasion of the jury never shifts, but remains with the affirmative throughout the case. Notwithstanding this general statement, the defense being suicide, the court was reluctantly moved to affirm the decision below, where an instruction shifted the burden of proof to the defendant by reason of the presumption against suicide therein invoked. This was in response to the holding of the Supreme Court in Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308, and our own decision in Standard Life & Accident Ins. Co., v. Thornton, 100 F. 582, 49 L. R. A. 116, and under compulsion of the doctrine of stare decisis. No presumption, however, either procedural or evidentiary, is here invoked, and we see no occasion for pressing the doctrine of the Ross Case further than was there required.

Two of the federal Circuit Courts of Appeals have recently re-examined the rule as to the burden of proof in cases of accidental death. Travelers' Insurance Co. v. Wilkes, 76 F.(2d) 701 (C. C. A. 5); Preferred Accident Ins. Co., of N. Y. v. Combs, 76 F.(2d) 775 (C. C. A. 8). In each case the burden of proof was placed upon the plaintiff in respect to a defense limiting the general insurance clause. In the Wilkes Case the court disapproved an instruction shifting the burden of proof to the defendant to establish suicide, and noted a distinction between the usual life policy containing an exception of death by suicide and one promising payment not for death, but for death by accident. In the latter the accident must be proved, thereby negativing suicide. We conclude upon this point that there was no error in placing the burden of proof upon the plaintiff.

On the second ground of error, we find ourselves unable to sustain the judgment below. Dr. Coons was the personal physician of the insured. Over strenuous objection, and under interrogation by the court itself, he was permitted to give an opinion that the causes contributing to the death of the insured were vertigo, nervous exhaustion, and indigestion with eruptions. This evidence was clearly inadmissible. The doctor had not seen the accident, and it was not proper subject-matter for expert opinion. As a physician he was no better qualified to give his views upon the contributing causes of death than was any lay witness. Moreover, his opinion was in negation of the very issue which plaintiffs were required to establish. "It was the ultimate issue to be decided by the jury upon all the evidence in obedience to the judge's instructions as to the meaning of the crucial phrase, and other questions of law." United States v. Spaulding, 293 U. S. 498, at page 506, 55 S. Ct. 273, 79 L. Ed. 617; cf. Mfrs.' Accident Indemnity Co. v. Dorgan, supra. Nor have we any doubt that the evidence was prejudicial coming from the source it did. Brought out by examination under oath, it cannot be construed as an admission against interest binding upon the plaintiffs. Prejudice is not negatived by the fact that proofs of death signed by Dr. Coons contained a like opinion upon the contributing causes of death. When the proofs were offered

they were objected to by the defendants, and in partial response to such objection were received for the limited purpose only of proving compliance with the policy provisions with respect to notice and proof of death. Counsel may not now urge that they should have been received generally without limitation.

Judgment reversed, and cause remanded for new trial.